UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATRICE M. CRISPELL,

          Plaintiff,

   vs.

FCA US, LLC,

          Defendant.

_____/

Case No. 20-CV-10558

HON. GEORGE CARAM STEEH

ORDER GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT [ECF NO. 46]</u>

This action was filed by plaintiff Latrice Crispell ("Crispell") against her former employer, defendant FCA US, LLC ("FCA"). Crispell claims that FCA violated her rights under the Family Medical Leave Act ("FMLA"), 9 U.S.C. §2611 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 31.1202 et seq. by issuing her suspensions and terminating her for alleged violations of FCA's Attendance Policy. The matter is before the court on FCA's motion for summary judgment (ECF No. 46). Upon careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

FACTUAL BACKGROUND

Crispell first began working for FCA at its Warren Truck Assembly Plant ("WTAP") in 1995. She worked as a "floater" in the paint shop, filling in at various positions when other employees were absent. Crispell was required to report for work at 5:00 a.m.

In October 1999, Crispell was terminated from WTAP due to absenteeism. FCA eventually reinstated her in March 2000, after a five-month suspension. Shortly after returning to work, Crispell was again suspended for nearly seven months, and was reinstated in April 2001. In 2006, Crispell accumulated six unexcused absences during a nine-month period. As a result, FCA issued her a final written warning. In October 2012, Crispell received corrective action for attendance issues, after accumulating five attendance occurrences.

Despite Crispell's history of attendance issues, she continued to be re-employed by FCA. This lawsuit arises from Crispell's termination on October 23, 2018. At that time, Crispell's employment was covered by FCA's 2015 collective bargaining agreement ("CBA") with the United Auto Workers ("UAW"). The CBA contains an Attendance Policy that sets forth a progressive discipline procedure for attendance occurrences. Under the Attendance Policy, tardies and absences are tracked under separate systems. As pertinent to this case, the Attendance Policy allows an employee to accumulate two tardies without penalty, after which

FCA issues progressive discipline. The progressive discipline procedure of the Attendance Policy assigns disciplinary action for tardies as follows:

1st Tardy—Verbal Warning

2nd Tardy—Written Warning

3rd Tardy—Written Warning and Counseling

4th Tardy—Three (3) Day Disciplinary Layoff

5th Tardy—Thirty (30) Calendar Day Disciplinary Layoff

6th Tardy—Discharge

The Attendance Policy contains a 30-minute call-in rule, which requires employees to call a designated phone number at least 30 minutes before the start of their shift to notify FCA if they will be tardy or absent. Failure to provide 30-minute advance notification of a tardy or absence results in an occurrence under the progressive discipline procedure.

Between May 2017 and September 2018, Crispell incurred six tardy occurrences. FCA issued Crispell's first tardy occurrence on May 22, 2017, the second on June 27, 2017, and the third on August 31, 2017. Crispell did not challenge these three occurrences in before the EEOC or in this lawsuit.

On January 26, 2018, Dr. Leon Reubenfaer, Crispell's psychiatrist, submitted an FMLA certification form to Sedgwick, FCA's third-party administrator of FMLA leave. The FMLA certification requested that Crispell be

approved for intermittent FMLA leave of up to two episodes per week, with two absences per episode. FCA did not approve Crispell to take intermittent FMLA leave because, in response to question 9 on the form, her medical provider reported that she was not unable to perform the essential functions of her position due to her condition. On February 19, 2018, Dr. Reubenfaer submitted a revised FMLA certification form stating that Crispell *was* unable to perform her essential job duties during a flare-up of her serious health condition.

Sedgwick notified Crispell that she was approved for intermittent FMLA leave on February 26, 2018. Sedgwick's letter advised Crispell that she was "required to report all absences and tardiness in accordance with FCA's mandatory Call-in Procedure. A failure to properly report any absence or tardy from work may result in disciplinary action, up to and including discharge." ECF No. 47-5, PageID.699. Crispell acknowledged at her deposition that she had intermittent FMLA for "many years" before 2018 and she regularly reported tardies and absences under the call-in procedure before 2018. ECF No. 46-2, PageID.600.

In addition to the call-in procedure, an employee could seek to use personal leave to cover an absence or a tardy. Anne Stebbins, FCA's director of hourly FMLA administration, explained that Crispell could use her personal leave in increments as small as six minutes to cover for absences or tardiness caused

by sudden flare-ups of her illness. On days when she wanted to use leave, she had to call into FCA's "attendance procedure" line at least 30 minutes before her shift. Stebbins also testified that if a late call-off is the result of an employee's medical condition, FCA could waive discipline for the late call where the employee provides a statement explaining the reason they could not make the 30-minute call-in, and they have FMLA certification covering that reason. ECF No. 52-9, PageID.1075.

There is another exception to the progressive discipline policy for medical emergencies. Under Letter 257 of the CBA, an employee can avoid an attendance occurrence if they are suffering a severe illness resulting in immediate emergency medical treatment at the time the employee would otherwise be required to call in. ECF No. 47-7, PageID.706.

Crispell's fourth and fifth tardies under the progressive discipline procedure occurred on January 24 and March 24, 2018, when she arrived late for her shifts without providing 30 minutes advance notice. These attendance occurrences triggered step four and step five under the Attendance Policy, for which FCA imposed a three-day disciplinary layoff beginning on February 8, 2018, and a thirty-day disciplinary layoff beginning on April 4, 2018.

Crispell did not receive emergency medical treatment on either of these dates, so she did not have a qualifying event under Letter 257 of the

CBA. Crispell did submit two handwritten statements in which she sought to be exempt from the call-in procedure due to her taking of intermittent FMLA leave. The two statements asked that her discipline be rescinded because her late call ins were due to her covered FMLA illness. ECF No. 1-4, PageID.29, ECF No. 1-6, PageID.34.

FCA's Labor Representative, Brian Kauflin, attended one of the disciplinary meetings for occurrences four and five where Crispell contended that it was improper for FCA to issue the discipline for her late call-in because she had approved FMLA leave. Kauflin testified that he told Crispell she needed to provide detailed information as to why she was unable to abide by the 30-minute call-in period on those two tardies. Kauflin described his conversation with Crispell as follows:

> I said I need more details. Just having FMLA is not enough. I'm offering you the opportunity to provide me more information and more details as to what specifically occurred that prevented you from calling in. She failed to provide that information. I believe she said I gave you a note already. I have FMLA.

ECF No. 48-1, PageID.730.

Crispell's sixth and final tardy occurred on September 20, 2018. On that day, Crispell punched in at 5:03 a.m. Crispell asserts that she was tardy because she had to stop for a train near the entrance to WTAP. On September 21, 2018, Crispell went on a medical leave of absence until an

independent medical examination found she was fit to return to work.

Crispell returned to work on October 23, 2018, at which time FCA informed

her she was being terminated because she had reached Tardy Step 6

under the Attendance Policy.

Crispell asserts three exceptions to FCA's Attendance Policy that

have been applied in the past and which she believes should have been

applied to her as an accommodation: (1) late start, (2) pre-excused

tardiness, and (3) the tragedy exception.

1.  Late Start Exception

FCA's computer system identifies a late call-in by comparing the

employee's official start time to the time that the employee clocks in.

Crispell suggests that supervisors can change an employee's official

starting time, so that the tardy does not register on the computer system. In

support, Crispell and another paint shop employee, Dilantrya Wilson-Sims,

submitted declarations stating that on occasion their supervisors gave them

a later start time when they arrived late to work so they would not be

recorded as tardy. ECF No. 52-2, PageID.961, ECF No. 52-13,

PageID.1146. Wilson-Sims described this happening to her once when she

was late due to car trouble, but she did not provide the date when this

occurred. Crispell's supervisor, Jody Jones, denied a late start policy to

excuse tardies, ECF No. 52-3, PageID.991, and declined Crispell's request for a late start on September 20.

    2.  Pre-excused Tardiness Exception

Crispell describes another exception to the Attendance Policy, where tardies are excused even when there is no record of the employee giving 30-minute call-in notice. She provides the attendance record of "A.D." which shows 19 tardies and "NO" appearing in the call-in column, yet the supervisor entered "YES" in the pre-excused column. Crispell contends that A.D. was allowed to use personal time to cover each tardy instance. ECF No. 52-14, PageID.1148. Jones testified that A.D. often provided advance notice of a tardy by calling Jones' personal cell number rather than FCA's official attendance line. Anytime A.D. was permitted to use personal time it meant he gave at least 30 minutes notice. ECF No. 52-3, PageID.990.

Crispell testified that there were times Jones allowed her to use personal time to excuse her from a late call-in, but did not give specific dates when this occurred. ECF No. 52-15, PageID.1168. A co-worker, Verlon Andrews, stated that even if you did not call 30 minutes early, you could still ask your supervisor to give you personal time when you arrived at work. "The supervisor did not have to grant that time, but . . . Jones and other supervisors occasionally did that for me, and I believe that they did it

for others." Andrews described an instance in the fall of 2018 when she was late because she was stuck in traffic and Jones allowed her to take personal time even though she did not call in. ECF No. 52-16, PageID.1193-1194.

Crispell submits the attendance records of 5 other co-workers, Y.B., K.W., W.G., J.D. and D.N., she alleges were permitted to use personal time to cover short tardy incidents where they had not provided timely call-in notice. In the case of D.N., Crispell argues that he was allowed to use personal time to cover two tardies even though he had received a 3-day and 30-day suspension for tardiness. Crispell argues that this demonstrates that supervisors ignored the terms of Letter 257 for other employees.

Labor Relations Representative Brian Kauflin testified that supervisors have discretion to grant an employee personal time to cover a tardy even if the employee first asked for it when they arrived to work late. ECF No. 52-22, PageID.1219. Labor Relations Representative Diamond Dortch agreed with Kauflin's testimony, but clarified that the supervisor would still have to abide by the terms of Letter 257.  ECF No. 52-23, PageID.1269. This means that the request to use personal time would have to be made 30 minutes prior to the start of the shift and the employee could

not have been issued a step four or greater disciplinary time off in the previous 12 months. *Id*.

3.  Tragedy Exception

Crispell refers to testimony from FCA's Manager of Attendance Analytics, Robert Searcy, that a tragedy exception is "supposed to be used when there are exceptional and unavoidable circumstances that the employee suffered that prevented them from attaining work on a timely basis, if at all." ECF No. 52-12, PageID.1122. This exception had been used to excuse employees who missed work or were late due to storms, floods, downed power lines, major accidents, as well as medical emergencies or car troubles.

Crispell arrived 3 minutes late to work on September 20, 2018 because a train that was doing switching work for FCA was blocking the road outside the plant gate. Upon arriving to work, Crispell asked Jones if he could move her start time back so she would not be late. Jones said he would see what he could do, but ultimately said he was not able to change her start time. Crispell then asked if she could use four hours of personal time, but Jones declined that request as well. Crispell and her UAW representative went to the Labor Relations office and asked Labor Relations Supervisor Scott Campbell to excuse the September 20, 2018

tardy under the tragedy exception due to the train blocking her way to the plant. However, Campbell refused to grant an exception to Crispell because the train incident was not one that impacted "the masses." ECF No. 52-24, PageID.1311 to 1312.

Crispell submits evidence that one month earlier, on August 28, 2018, a train blocked entrance to the plant at 5:00 a.m. Attendance records from that date show that Kauflin approved a tragedy excuse for 7 paint shop employees who were late due to the train. One of those employees had received a 3-day suspension for tardiness. Kauflin claimed he did not recall why he gave those exceptions, but that he would not have granted them without Campbell's approval. ECF No. 52-22, PageID.1224-1225.

On April 20, 2018, Crispell filed a charge of discrimination with the EEOC alleging that FCA failed to accommodate her disability and discriminated against her by refusing to accept her physician's January 26, 2018 certification and for imposing the April 4, 2018 suspension. The February 8, 2018 suspension was not included in Crispell's EEOC Charge. On November 13, 2018, Crispell filed a second charge of discrimination with the EEOC, this time alleging that FCA did not allow her to use personal time to cover her September 20, 2018 tardy because she has a disability and in retaliation for having filed her April 20, 2018 charge of

discrimination. On December 5, 2019, the EEOC issued a Notice of Right to Sue letter for both charges and terminated its investigation at Crispell's request.

On March 3, 2020, Crispell filed this lawsuit alleging discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act and the Michigan Persons with Disabilities Act, and retaliation under the Family Medical Leave Act.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence

on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

I.    <u>Retaliation – FMLA, ADA, PWDCRA</u>

As a preliminary matter, in Count Three of her complaint, Crispell expressly alleges an FMLA retaliation claim. The only reference to FMLA in the introductory paragraph of the complaint states: "The plaintiff further asserts that FCA retaliated against Crispell for her exercise of rights under the Family Medical Leave Act (FMLA) . . . ." Then in Count Three, at paragraph 70, plaintiff alleges: "[i]n suspending and discharging Crispell for the reasons set forth above, FCA retaliated against her for her exercise of her rights under the FMLA."

For the first time, in her response to FCA's motion for summary judgment, Crispell attempts to assert an FMLA interference claim, arguing that FCA interfered with her exercise of her FMLA rights by disciplining her for failing to give proper notice that she would be late to work on the dates at issue. However, the allegations of the complaint fail to put FCA on notice that plaintiff is asserting an interference claim. See *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (distinguishing *Wysong* and determining that district court did not err by confining its analysis of the plaintiff's claim to FMLA

- 14 -

retaliation where "the essence of [plaintiff's] claim is retaliation, not interference with his substantive FMLA rights.").

To establish a claim for interference under FMLA, a plaintiff must demonstrate that (1) she is an eligible employee, (2) defendant is an employer as defined under the FMLA, (3) plaintiff was entitled to leave under the FMLA, (4) plaintiff gave defendant notice of her intention to take leave, and (5) defendant denied plaintiff FMLA benefits to which she was entitled. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016). Even under the broadest reading of Crispell's complaint, there is no indication that she is alleging that she gave FCA notice of her intention to take FMLA leave and FCA wrongfully denied her request. Because Crispell failed to put FCA on notice that she was asserting an FMLA interference claim, the Court will not take up her late attempt to assert the claim and will proceed to evaluate plaintiff's FMLA retaliation claim as pled in the complaint.

To establish a prima facie case of FMLA retaliation, Crispell must show that (1) she availed herself of a protected right under the FMLA; (2) her employer had knowledge of this protected activity; (3) she suffered an adverse employment action; and (4) there was a causal link between the exercise of her rights under the FMLA and the adverse employment action. *Edgar v JAC Products, Inc.*, 443 F.3d 501, 507-508 (6th Cir. 2006). If Crispell is able to establish a prima

facie case of FMLA retaliation, the burden shifts to FCA to provide a legitimate, nondiscriminatory reason for the adverse action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). If FCA provides such a reason, the burden shifts back to Crispell to show that the reason is a pretext for unlawful discrimination. *Id*. at 761-62.

Crispell first argues that she was retaliated against when FCA disciplined her on January 24 and March 24, 2018 for failing to meet the 30-minute call-in requirement on those dates. It is undisputed that Crispell was aware of the call-in requirement. Rather, Crispell argues that she was prevented from calling in on those dates due to unusual circumstances and that her failure should be excused. As discussed above, FCA allows for an exception when emergency medical treatment makes an employee unable to follow the call-in procedure. However, Crispell has presented no evidence that she received emergency medical treatment on those dates, nor do her handwritten notes provide any details why she was unable to timely call-in. Therefore, there is no issue of fact but that FCA issued the attendance disciplines to Crispell on those dates in compliance with FMLA regulations and FCA's legitimate call-in rule.

Crispell also characterizes FCA's refusal to excuse her September 20, 2018 tardy, and for her termination, as retaliation for exercising her legal rights by taking FMLA leave and for filing her April 20, 2018 EEOC Charge of

discrimination. Crispell alleges that even if FCA has provided a legitimate nondiscriminatory reason for failing to excuse her tardy and for terminating her, it is pretext for unlawful retaliation. As evidence of pretext, Crispell generally assets that FCA treated other employees more favorably than it treated her: (1) she was not excused for her tardy due to a train, while other employees were excused for being tardy because of a train on July 28, 2018; (2) she was not given a tragedy exception, while co-workers who were late due to problems with FCA's turnstiles or timeclocks were given a tragedy exception; and (3) her tardy was not excused while others who were late due to flat tires or car accidents on their way to work were excused.

In order "to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct as plaintiff." *Woida v. Genesys Reg'l Med. Ctr.*, 4 F. Supp. 3d 880, 905 (E.D. Mich. Mar. 18, 2014) (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)). Of course, the court must look at the circumstances to determine if the comparable employees identified by a plaintiff are similar in "all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original).

FCA did not treat co-workers more favorably than Crispell by excusing their attendance occurrences but not hers – FCA gave Crispell the benefit of the doubt on her attendance issues by reinstating her employment twice previously after she had been terminated. In addition, FCA granted an exception to Crispell's tardy on March 28, 2018 when it excused her from a late call-in which would have put her at step 6 of the tardy procedure and resulted in her termination. Searcy Decl ¶ 2, ECF No. 55-3, PageID.1450 and ECF No. 52-4, PageID.1013.

Crispell identifies other co-workers who she alleges were treated more favorably by FCA. FCA excused Verlon Andrews from a late call-in during fall 2018. While the exact date is not provided, FCA reviewed Andrew's attendance records and discovered that she had a tardy excused on November 21, 2018. Searcy Decl ¶ 3, ECF No. 55-3, PageID.1450-1451. However, Andrews's attendance record shows that she had no attendance occurrences on her record as of November 21, 2018. By comparison, Crispell had five occurrences, two of which resulted in disciplinary time off, when she incurred her final violation on September 20, 2018. This difference between Andrews's and Crispell's disciplinary history demonstrates that Crispell and Andrews were not similarly situated.

Crispell's argument that FCA treated A.D. more favorably than her is also problematic. Crispell takes issue with FCA allowing A.D. to use personal time to

cover tardies. But A.D.'s attendance records show that he had no disciplinary time off and therefore, under Letter 257, he was eligible to use personal time to cover his tardies as long as he called in 30 minutes before his shift. While Crispell argues that A.D. did not call in 30 minutes before his shift on the occasions when he was allowed to use personal time, Crispell's argument is contradicted by Jones's testimony that A.D. did call him, and Crispell has presented no admissible evidence in rebuttal. Fed.R.Civ.P. 56(c), (e).

Crispell also argues that FCA treated Y.B., K.W., W.G., J.D., and D.N. more favorably than her by allowing them to use personal time to cover their tardies. This argument is flawed for several reasons. First, Crispell only provided attendance records for three of these employees—Y.B., J.D., and D.N. Crispell's arguments regarding FCA alleged favorable treatment of K.W. and W.G. cannot be considered because Crispell has failed to provide admissible evidence in support. As for Y.B. and J.D., their attendance records show that they were pre-excused on the dates when they used personal time and had no disciplinary time off on their attendance records. Crispell was not pre-excused for her September 20, 2018, tardy and she did have disciplinary time off on her attendance record. While D.N. was apparently allowed to use personal time on two occasions despite having disciplinary time off on his attendance record, Crispell also benefitted from similar leniency on March 28, 2018 when FCA excused her from

a tardy that would have resulted in her termination and also when FCA reinstated her twice after it terminated her for poor attendance.

Lastly, Crispell argues that FCA treated Wilson-Sims more favorably by giving her a "late start" on a date when she had car trouble. However, Crispell fails to provide the date when this alleged favorable treatment took place. FCA cannot investigate this situation without knowing the dates when this occurred. Searcy Dec. at ¶4, ECF No. 55-3, PageID.1451. Even assuming that FCA did give Wilson-Sims a late start that was not pre-excused, this would be no different than the leniency shown to Crispell on occasion, such as on March 28, 2018.

The record shows that FCA received no details from Crispell explaining why she was unable to call-in on January 24 and March 24, 2018. It also shows that Crispell was the only person who was allegedly stuck behind a train on September 20, 2018 and was therefore not given a tragedy excuse on this date. Crispell cannot establish discriminatory animus, or pretext, based on these facts and therefore her retaliation claims fail.

Crispell's ADA and PWDCRA retaliation claims are based on FCA terminating her for filing her EEOC charge on April 20, 2018. To establish retaliation, Crispell must show that she engaged in a protected activity and there was a causal connection between the protected activity and the adverse employment action. *See Bryson v. Regis Corp.,* 498 F.3d 561, 577 (6th Cir.

2007); *Aho v. Dep't of Corrections*, 263 Mich. App. 281, 288-289 (2004) (citations omitted). At the time she filed her EEOC Charge, Crispell was at Step 5 in the Attendance Policy, just one step away from termination. "An employee cannot allege discrimination like a protective amulet when faced with the possibility that [her] preexisting disciplinary problems could lead to [her] termination." *Beard v. AAA of Mich.*, 593 Fed.App'x 447, 451 (6th Cir. 2014). On September 20, 2018, five months after filing her EEOC Charge, Crispell reached Step 6 and FCA terminated her employment under the terms of the Attendance Policy.

There is no evidence from which a reasonable fact-finder could conclude that Crispell's EEOC Charge played a factor in FCA's decision to terminate her. Even if Crispell was able to make out a prima facie case of retaliation, she cannot establish pretext for the reasons set forth above in relation to her FMLA retaliation claim.

Summary judgment on Crispell's retaliation claims will be granted in favor of FCA.

II.   Failure to Accommodate – ADA and PWDCRA

Under the ADA, an employer's failure to reasonably accommodate a known disability is discriminatory, unless the employer can demonstrate the suggested accommodation would impose an undue hardship on the operation of the

business. 42 U.S.C. § 12112(b)(5)(A).[1] To establish a *prima facie* case for failure to accommodate, Crispell must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist*., 443 F. App'x. 974, 982–83 (6th Cir. 2011) (*citing DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).

Crispell's physician certified Crispell as having a medical condition with occasionally occurring flare ups, precluding her from performing her essential job duties and requiring intermittent absences from work. While Crispell's inability to work during flare-ups entitled her to take intermittent FMLA leave, her periodic inability to work foreclosed her from being a "qualified individual" under the ADA. *See* 42 U.S.C. § 12111(8) (defining "qualified individual" to be "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position"). "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a qualified individual

---

[1] The obligations under the PWDCRA are substantially the same as those under the ADA such that resolution of plaintiff's ADA claim will generally resolve the PWDCRA claim. *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012); *Peden v. City of Detroit*, 470 Mich. 195, 207 (2004).

protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).

Predictable attendance and starting shifts on time is essential for factory positions, like Crispell's job in the paint department. Crispell argues that she and the UAW repeatedly asked FCA for flexibility on the call-in time limit for excusing a tardy. While this may be true, the evidence shows that even when Crispell was given the opportunity to explain why she failed to make a timely call-in, she failed to provide a detailed explanation related to her disability. This is consistent with Crispell's deposition testimony where she described the accommodation she really sought as "[e]xempting me from that 30 minute rule, and the call-in procedure." ECF No. 46-2, PageID.601.

The Court concludes that there is no issue of fact to support Crispell's argument that she was a qualified person with a disability. In addition, Crispell's request to be exempted from the 30-minute call-in rule for all instances of intermittent FMLA leave is not a reasonable accommodation. Crispell's position as a floater in the paint shop was to ensure coverage if other positions were not staffed on a given shift. Exempting her from the call-in rule would eliminate an integral component of regular attendance, and the very essence of her position which was to provide coverage when and where needed, and is therefore not a reasonable ADA accommodation.

Summary judgment on Crispell's failure to accommodate claims in violation of the ADA and the PWDCRA is granted in favor of FCA.

III.  ADA and PWDCRA Disability Discrimination

To establish disability discrimination under the ADA, Crispell must make out a *prima facie* case by establishing that (1) she has a disability, (2) she is "otherwise qualified" for the position, with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) her employer "knew or had reason to know" of her disability, and (5) she was replaced or her position remained open. *Williams v AT&T Mobility Services LLC*, 847 F.3d 384, 395 (6th Cir. 2017. Similarly, to establish a *prima facie* case of disability discrimination under the PWDCRA, Crispell must prove that (1) she is disabled as defined under the PWDCRA, (2) her disability is unrelated to her ability to perform her job duties; and (3) she was discriminated against in a manner prohibited by the PWDCRA, i.e., that she was discharged because of her disability. *Peden v. City of Detroit*, 470 Mich. 195, 204-05 (2004).

In her response to FCA's motion for summary judgment, Crispell does not address her ADA and PWDCRA discrimination claims. The claims will therefore be dismissed as abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 Fed.Appx. 368, 372 (6th Cir. 2013) ("a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.");

- 24 -

*Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir.2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment).

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (ECF No. 46) is GRANTED and plaintiff's Complaint is dismissed in its entirety.

Dated:  January 10, 2023

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 10, 2023, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk

---